### HASTINGS *v.* PFEIFFER.

Opinion delivered December 7, 1931.

*Arthur Sneed* and *E. G. Ward,* for appellant.

*W. E. Spence* and *W. F. Kirsch,* for appellee.

BUTLER, J. A number of claims were allowed by the county court of Clay County in the last half of the year 1930 upon which warrants were issued payable out of the "County Highway Fund." Between March 7th and April 27, 1931, these warrants were by the appellees, then the owners of the same, presented to the county treasurer for payment, which, being refused, a mandamus proceeding was instituted by the appellees on the last-

named date to enforce the payment of said warrants, From the order awarding the writ this appeal is prosecuted.

The facts, about which there is no dispute, may be summarized as follows: The funds arising from the collection by the State of gasoline taxes and automobile license fees allotted to the county, prior to the passage of act 63 of the Acts of 1931, were carried on the books of the county treasurer as the "County Highway Fund." On a day of a regular term of the county court held on March 7, 1931, an order was made and entered directing the treasurer to keep the funds received by the county under the provisions of said act separate from other funds, and to carry the accounts thereof on his books as the "Clay County Road Fund," and directing him to pay out the moneys received only upon warrants drawn on said fund. After said date and order, the moneys received by virtue of act No. 63, *supra,* were carried on the books of the treasurer in accordance with said order.

At the time of the presentation of the warrants by the appellee, there remained a small balance amounting to about $............ in the county treasury to the credit of the "County Highway Fund," and in addition there was on deposit in various insolvent banks sums due this fund which were not then available, although it was expected that from these deposits payments would be received by the county in the future. The total amount of the warrants presented by the appellees was $4,545.94, and there had been received and placed to the credit of the Clay County road fund sums in excess of this amount which were in the treasury at the time the warrants were presented.

The proportionate amounts received by the counties from the State treasury derived from taxes on gasoline and automobile license fees, etc., is commonly known as "county turnback." This turnback had its origin in § 21 of act No. 5 of the Acts of 1923, special session of the General Assembly, popularly known as the Harrelson Road Law. That section provided that from the moneys received for gasoline tax, etc., the sum of

$3,000,000 should be allotted to the various counties according to the classification therein made, and the allotment was designated at times as "county highway fund" and at others as "county highway improvement fund" with the provision that it should be "by the county court expended upon the public highways of said county, and it shall be the duty of the county court to fairly and equitably apportion the funds so paid into the county highway improvement fund at the option of said court among the various road districts and road improvement districts, or road districts only, in said county for the purpose of constructing and maintaining roads."

By act 147 of the Acts of 1925, § 21 of act No. 5, *supra,* was amended in various particulars, but the method of expenditure of the turnback to the county remained as before. By § 2 of act No. 11 of the Acts of 1927, § 21 of act 5, *supra,* as amended by act 147 of the Acts of 1925, was repealed. In lieu of the provisions of that section, it was provided in § 10 of act No. 11 for aid to the counties by a certain turnback of the State Highway Fund to the counties. The fund to be paid to the counties was designated sometimes as "county highway fund" and sometimes as "county highway improvement funds," as in § 21 of act No. 5, *supra.* The purpose of this turnback, as expressed in § 10 of act No. 11, *supra,* was "for use on the county roads." The provision of the section directing that the money be expended by the county court at its option, etc., was omitted, and no specific direction made regarding its expenditure. This act was further amended by act No. 18 of the Acts of 1929. Section 9 of that act fixed the amount of the turnback to be allotted to the various counties "for aid to county highway funds." By subdivisions (e) and (f) of § 1, act 63 of the Acts of 1931, the revenue derived from taxes on motor vehicle fuel, license fees, etc., allocated to the county was designated as the "county highway fund." By subdivision (h) of § 1 of that act it was directed that the entire allotment of each county, where there were no outstanding road bonds, should be

remitted to the county treasurer of each county for credit to the county road fund to be disbursed by the county judge of said county for any of the following purposes: (1) For the building of farm-to-market roads or the maintenance of farm-to-market roads already built. (2) To the payment of maturities of bridge bonds issued by any bridge improvement district created prior to the passage of this act in such amount as the county court or judge hereof (thereof) shall determine.

It is argued first by appellant that the court erred in issuing a temporary injunction restraining the treasurer from paying out any moneys to the credit of the county road fund until the petition for mandamus might be heard, and that on the petition itself no proper notice was given, and that the writ prayed for was illegally awarded because other adequate remedies at law were available to the appellees. It would serve no useful purpose to review the authorities cited in support of these contentions because authority for the proceeding by mandamus is found in the act relied upon by appellees (act 63, *supra*). Section 7 says: "The provisions of this act may be enforced by mandamus by any interested parties."

The essential question presented is whether or not the writ was correctly awarded on the merits. It is the contention of the appellant that act No. 63, *supra,* provided for a new and different arrangement in regard to the use and purpose of funds delivered to the various counties for roads. We do not agree with appellant in this contention. Beginning with the passage of the Harrelson Road Law a certain part of the moneys arising from tax on gasoline, motor oil, motor vehicle license fees and privilege taxes accruing to the State Highway Funds were allotted to the various counties according to certain classifications. The manifest purpose of the act was to aid the counties in the construction and maintenance of county highways. The designation of the funds allotted was not considered by the Legislature as of any great moment for it uses one expression at one time and another expression at another—sometimes

"county highway funds," at others "county highway improvement funds," and, lastly, as "county road funds," all meaning one and the same thing, *i. e.,* a fund to be used by the county in the construction, maintenance or improvement of county highways. This is the purpose for diverting funds from the State Highway Funds to the counties from the beginning of the legislation until and including the Act of 1931, and no other. We have been unable to find in any text or decision of any court where the expression "farm-to-market" roads has been given a definition, but we are of the opinion that the expression as used in the act of 1931 means any of the public highways of the county leading either directly to, or intersecting, the State highways leading to markets, and under the proof in the case the circuit judge correctly found "that all of the highways in the county road system of Clay County, Arkansas, lead from the farms to some market in said county." They were therefore "farm-to-market" roads.

Attention is called to the emergency clause contained in § 9 of act No. 63, *supra,* and it is argued that the Legislature intended to restrict the expenditure of road funds allotted to the counties to such improvement or construction as would be made after the passage of the act, and therefore a warrant founded on a claim for improvement or construction made before the passage of the act and before the funds reached the county thereunder was precluded. The language of that clause is as follows: "In view of the existing conditions of the various counties of the State of Arkansas, which by reason of the drouth and financial depression have so retarded the building of roads that it is impossible for the various road districts and counties in this State to keep roads in a safe condition and enjoy equal opportunities in the matter of road transportation, which condition is unsafe and has retarded progress and enforced idleness upon a large portion of our people and jeopardized the safety of the traveling public, an emergency is hereby declared to exist," etc. In construing this clause, the provisions of the act must be taken into account and the

purposes for which the clause was inserted. The reason for the emergency clause was to give immediate effect to the act, and with this in mind we do not think that the clause warrants the construction placed on it by the appellant.

We are of the opinion that it is immaterial by what name the fund was called where it is shown, as in this case, that the "county highway fund" and the "Clay County Road Fund" were received from the same source, derived from the same character of taxation and devoted to the same purpose. We conclude therefore that the judgment of the trial court was correct, and it is affirmed.