LADD *v.* STUBBLEFIELD.

4-4809

Opinion delivered December 20, 1937.

263

D. B. Bartlett, J. J. Montgomery and Hays & Wait, for appellants.

Reynolds & Maze, for appellees.

GRIFFIN SMITH, C. J. Appellee Stubblefield became county and probate judge and ex-officio road commissioner of Johnson county on January 1, 1933. The petition for injunction, amended and supplemental petition, petition for writ of certiorari, and intervention, question legality of salary payments, and expense items incident to operation of an automobile used by Stubblefield in connection with his duties as road commissioner.

To these pleadings a demurrer was sustained, but before such action had been taken by the court, appellants asked leave and were granted the right to dismiss without prejudice as to all items of expense allowed for the benefit of appellee Stubblefield within six months prior to April 28, 1937. Appellants asked that appellees' demurrer be treated as a motion to transfer to equity. This was denied.

It is necessary (1) to determine whether the court had jurisdiction, and (2) whether appellants stated a cause of action.

It is alleged that appellee Stubblefield, for the months of January, February, March, and April, 1933, collected one-half of his salary, or $400, from the general road fund, and that from May (1933) to December, inclusive, his salary of $1,600 was paid from the general road fund. Also, that during 1934, 1935, 1936, and for January, February, and March, 1937, a period of 39 months, Stubblefield was paid his full salary of $7,800, such payment having been made from the county turn-back fund, and that these monthly payments of $200 each were made without an order of the county court ascertaining that any part of such salary was

chargeable to the turn-back. It is further charged that during 1933 appellee Stubblefield, as county judge, approved allowances aggregating $424.77 from the general road fund for "repairing, washing, servicing, greasing, and fueling his private automobile," and that during 1934, 1935, 1936, and the first three months of 1937, he was the beneficiary of payments of a like character amounting to $1,439.66, a total of $1,864.43 which appellants allege was wrongfully paid from the county general road fund.

The prayer was that appellee Stubblefield "Be directed and compelled to replace, repay and refund to the road fund of the county the sum of $11,664.43, so illegally used and appropriated by him." Appellants also prayed that by certiorari the record of certain proceedings of the quorum court be brought up and that appropriations shown therein be declared void.

By act 97 of 1929, salaries of county and probate judges throughout the state were fixed. For Johnson county the amount so authorized was $2,400 per annum. By § 2 such judges were made ex-officio road commissioners, "And under the provisions of this act, any part of his salary, not to exceed one-half, may be chargeable to his county road fund or county highway fund, same to be fixed by the county court, subject to the approval of the quorum court; and, under this act, the several quorum courts of this state may make proper appropriations for the expenses of the several county and probate judges, as they deem proper, in the discharge of the duties of road commissioner herein created."

It is admitted that none of the appellants had any special interest in the litigation. In the original petition for injunction, filed in the circuit court April 1, 1937, appellants identify themselves as "Residents, citizens, taxpayers, and qualified electors of Johnson county." The amended petition was filed April 8. By stipulation of April 16 the following appears: "Plaintiffs may take into court as a part of their pleadings and issues to be settled, the validity of the so-called action of the quorum court of Johnson county at its January

meeting in the year 1935 and 1937, by writ of certiorari, or otherwise; and also the plaintiffs may take by appeal from the orders of the county court of Johnson county the allowance of any of the claims brought into issue by the suit already filed so far as the same can be legally done, . . . and the defendant, H. C. Stubblefield, will enter his appearance, waiving service of summons thereby, . . . but it is expressly understood that in entering his appearance to the writ of certiorari and validity of the orders of the court, neither party hereto waives any legal right or the right to make any defense to which he might be entitled in law." Petition for writ of certiorari was filed April 28. On May 22 an order, signed by H. C. Stubblefield as county judge was filed in the circuit court, formally permitting appellants to intervene with respect to the county court judgments on the questioned claims, and allowing such parties an appeal.

Section 2913, Pope's Digest, provides that "Appeals shall be granted as a matter of right to the circuit court from all final orders and judgments of the county court, at any time within six months from the rendition of the same . . . by the party aggrieved filing an affidavit and prayer for an appeal."

Appellees pleaded this statute of limitations, saying: "If the plaintiffs had felt aggrieved at the judgment of the county court, they had their right to appeal, and if by their own carelessness and negligence they lost their remedy, they have no right to complain."

Section 51, art. VII, of the Constitution, reads as follows: "In all cases of allowances made for or against counties, cities or towns, an appeal shall lie to the circuit court of the county, at the instance of the party aggrieved, or on the intervention of any citizen or resident and taxpayer of such county, city or town."

This constitutional provision has been construed as denying the right of appeal of a citizen or resident and taxpayer who was not a party to the proceedings where the order of the court did not amount to an allowance against the county. *Holmes* v. *Morgan*, 52 Ark. 99, 12 S. W. 201. *Fones Hardware Co.* v. *Erb*, 54 Ark. 645, 17 S.

W. 7, 13 L. R. A. 353, was a proceeding in chancery to enjoin a board of commissioners from building a bridge, for the payment of which no appropriation had been made. There it was said: "We can not say that the appellants could have obtained adequate relief by certiorari, for the want of jurisdiction arises from matters dehors the record. The remedy by appeal is inadequate, for the law does not give the taxpayer his day in court or provide that he may appeal without it. Since the remedy at law is not adequate and complete, we are of the opinion that injunction is the proper remedy."

In *Bowman v. Frith*, 73 Ark. 523, 84 S. W. 709, the holding was, as reflected by the syllabus: "If a county court has proceeded irregularly in the exercise of its constitutional jurisdiction to make a contract for the building of a court house, citizens, residents and taxpayers have a remedy to correct such irregularity by becoming parties to the proceedings and appealing to the circuit court." See, also, *Murphy v. Garland County*, 99 Ark. 173, 137 S. W. 813, where we said: "The appeal from the county court was prosecuted by a citizen and taxpayer, who had the right to so prosecute it from a judgment allowing a claim against the county." In an opinion written by Mr. Justice HART in 1911, *Van Hook v. McNeil Monument Co.*, 101 Ark. 246, 142 S. W. 154, at p. 249, there is this language: "The order appealed from was an allowance against the county, and the court in its statement of facts merely announced that Armstrong appealed from the order of allowance, and did not state whether or not he was a party before or after the order of allowance was made, but recognized his right to appeal. *Armstrong v. Truitt*, 53 Ark. 287, 13 S. W. 934. The effect of that decision is to hold that § 50, art. 7, of our Constitution, gives a resident, citizen or taxpayer the right to appeal from an order of allowance against the county, whether he intervenes before or after the allowance was made."

These decisions are conclusive of the proposition that a citizen and taxpayer may intervene as to a questioned allowance by the county court, either before, con-

current with, or after judgment, if the appeal is not barred by time.

It is alleged in the intervention, which serves as a complaint, that $424.77 was paid to appellee Stubblefield or for his benefit as car expenses in 1933, together with $2,000 in salary, such payments having been made from the general road fund—that is, the so-called three-mill tax. It is further alleged that for subsequent periods amounts aggregating $1,439.66 were paid for similar expenses, showing a total of $1,864.43 paid from the three-mill tax fund, if allegations of appellants are correct. By their demurrer, appellees admit the truth of these allegations. In addition, it is alleged that over a period of 39 months, subsequent to December 31, 1933, appellee as county judge rendered judgments on his salary claims for amounts aggregating $7,800, and that these payments were made from the county turn-back fund.

As to $3,864.43, the demurrer admits that the fund from which payment was made arose from the three-mill road tax, levied under authority of Amendment No. 3 to the Constitution. The amendment, after providing how the fund should be created and directing that it should be known as "the county road tax," contains the following: "It shall be used in the respective counties for the purpose of making and repairing public roads and bridges of the respective counties, and for no other purpose." The construction placed upon this mandate, in the case of *Burrow, County Judge, v. Floyd*, 193 Ark. 220, 99 S. W. 2d 573, was that such mandate constituted "An express limitation upon the power of county officials in the expenditure of funds collected by authority thereof. The apportionment of this fund or any part thereof to the payment of salaries or administrative expenses is not a dedication to or a use upon public roads or bridges in said county, and is, therefore, prohibited by the express language of the amendment." It may be urged, with very convincing logic, that supervision by the road commissioner of road and bridge construction and repairing is an essential part of the cost, but the opinion quoted, *supra*, is conclusive, and it must be accepted as the law of the case.

The rule is different as to the turn-back fund. *Anderson* v. *American State Bank,* 178 Ark. 652, 11 S. W. 2d 444, determined the status of certain warrants drawn against the highway improvement fund of Franklin county. The plan by which this fund was created had its inception in act 5 of the special session of 1923, known as the Harrelson Road Law. The act was amended in 1925, and in referring to such fund, we said: ''The fund out of which this claim was to be paid was not county revenue, but state revenue. The state turned this over to the county with the provision in the law that it was the duty of the county court to apportion the funds for the purpose of constructing and maintaining roads. And it expressly states that such apportionment shall be made by the county court after taking into consideration the relative importance of the roads in said county. Certainly the quorum court could have nothing to do with this. In making contracts for constructing or maintaining a road, or to pay for such material as was necessary to use in constructing and maintaining the road, to be paid out of this fund derived from the state revenue, the county court alone, and not the quorum court, must make the apportionment, so that the making of the contract in this case, whether it exceeded the revenue or not, is not controlled by the case of *Dixie Culvert Co.* v. *Perry County,* 174 Ark. 107, 294 S. W. 381, nor is it controlled by any of the decisions of this court construing Amendment No. 11.''

Provisions for payment to the counties of a fund similar to that dealt with in the Anderson Case were made in act 63 of 1931, act 48 of 1933, and act 11 of the 1934 special session. It is urged by appellees that act 48 of 1933 was held unconstitutional in *Hubbell* v. *Leonard,* 6 Fed. Sup. 145, decided January 4, 1934. We do not think the contention, if conceded, is of any value to appellees. The county accepted the fund as remitted by the state, and at least impliedly consented to use it in the manner originally intended.

The funds thus authorized to be paid to the county are so similar in origin and the purposes of the various

acts with respect thereto so nearly identical that other decisions distinguishing the fund from county revenues originating from local tax sources are directly in point. *Burke* v. *Gullege,* 184 Ark. 366, 42 S. W. 2d 397; *Hastings* v. *Pfeifer,* 184 Ark. 952, 43 S. W. 2d 1073; *Stanfield* v. *Kincannon,* 185 Ark. 120, 46 S. W. 2d 22; *Ogden* v. *Pulaski County,* 186 Ark. 337, 53 S. W. 2d 593.

We conclude, therefore, that the inhibitions of Amendment No. 11 against a county exceeding its revenue for a given year do not apply to the turn-back fund received from the state; nor, with the exception of act 97 of 1929, do any of the legislative acts dealing with the turn-back require that its use shall become a matter of concern to quorum courts. But act 97 does contain such a provision, and even though the road commissioner may receive one-half of his salary from the turn-back upon a finding of the county court that the apportionment should be made, there is a further requirement as a condition to a valid disbursement, and that requirement is that payment shall be approved by the quorum court.

Although the record does not disclose an order of the county court directing one-half of Stubblefield's salary to be paid from the turn-back fund, his action in making, filing, and approving monthly claims for the amounts involved would at least indicate that such a finding, though not reduced to writing, had been made, and the court's approval of the claims should be construed as a ratification, subject to approval of the quorum court. *Watson and Smith* v. *Union County,* 193 Ark. 559, 101 S. W. 2d 791. Yet, if it be conceded that approval by the quorum court could cure the error complained of as to the one-half of appellee's salary, the fact remains that no such approval has been given, and there is the further difficulty that the part payable only from the county general fund was paid from the turn-back, without authority.

As to the expense accounts, this difficulty arises:

The intervention alleges payment of all such items from the three-mill tax fund. *Burrow* v. *Floyd,* 193 Ark.

220, 99 S. W. 2d 573, holds that no part of such fund may be lawfully applied to salaries or administrative expenses. Maintenance of the road commissioners' car would clearly come within the classification of administrative expenses. It is argued by appellees that, inasmuch as warrants for car maintenance were not payable to the road commissioner, and this having been ascertained by the trial judge, there was a finding of fact in favor of the appellee Stubblefield. We do not think this distinction is sufficient to justify us in saying, as a matter of law, that appellee did not receive the benefits which the payments necessarily created.

It is next insisted that two appropriations were in fact made by the quorum court for car expenses, and the record so discloses. One is dated January 7, 1935. It undertakes to cover 1933, 1934, and 1935 at $300 per year. The other was made January 4, 1937—$25 per month "for the years 1933, 1934, 1935, 1936, and also for the year 1937."

Section 2505, Pope's Digest, provides: "No county court or agent of any county shall hereafter make any contract on behalf of the county unless an appropriation has been previously made therefor and is wholly or in part unexpended, and in no event shall any county court or agent of any county make any contract in excess of any such appropriation made, and the amount of such contract or contracts shall be limited to the amount of the appropriation made by the quorum court." In *Wiegel* v. *Pulaski County,* 61 Ark. 74, 32 S. W. 116, this court quoted a portion of the foregoing statute as it then appeared as § 1279, Sandel & Hill's Digest, and said: "Counsel for appellant contends that the validity of the contract with the county is *res judicata,* because the work under it was accepted and approved by the county, and allowances were made the contractor upon the work. But we think otherwise. There was no jurisdiction, without an appropriation first made, to make the contract upon the part of the county, and without such an appropriation it was void, and no adjudication could make it valid. If there was no power

to make the contract, it was not, and could not .be, ratified by the county's acceptance of the work done under it, so as to estop the county from asserting that it was void. 'A subsequent ratification cannot make valid an unlawful act, without the scope of the corporate authority.' ''

In *Durrett* v. *Buxton,* 63 Ark. 397, 39 S. W. 56, the same statute was construed in a manner not to apply to those contracts the duty to make which is imposed by law upon the county court.

The pleadings filed by appellants are three-fold—intervention, injunction, and certiorari.

The intervention seeks to .reach and set aside all judgments of the county court under which salary payments and·expense accounts were approved.· The relief asked through injunction is that the appellee Logan, as county clerk, be enjoined from issuing, and the appellee Pierson, as county treasurer, be enjoined from paying, any warrants drawn on the general highway road fund in favor of appellee Stubblefield. By certiorari it is sought to bring up and quash the orders of the quorum court making appropriations in favor of appellee Stubblefield to compensate travel expense.

We are of the opinion that the relief sought by intervention, as to that part wherein appellants seek to have the salary warrants declared void, is a collateral attack, and therefore cannot be maintained.

The county court, and that court only, has the power to allow claims against the various funds involved in this controversy. Its jurisdiction is not open to question. But, it is urged, there was no authority for payment of more than one-half of Stubblefield's salary from the turn-back fund, and no authority for paying any part of his salary from the three-mill fund. That is true. In making such payments the county court exceeded its power by directing that the claims· be paid from these funds, but the court had jurisdiction of the subject-matter—allowing claims—and the claims were filed with the court. Warrants issued in pursuance of such allowances were not void, but only voidable.

The rule stated by this court in numerous decisions is that unless it affirmatively appears from the record itself that the facts essential to jurisdiction of the court do not exist, a collateral attack against the judgment rendered by a court having jurisdiction will not prevail. *Crittenden Lumber Co.* v. *McDougal,* 101 Ark. 390, 142 S. W. 836; *McCarter* v. *Neil,* 50 Ark. 188, 6 S. W. 731. Freeman's Treatise on the Law of Judgments, vol. 1, p. 603, states this rule: "Judgments of a legally organized judicial tribunal, proceeding within the scope of its allotted powers, and possessing the requisite jurisdiction over the subject-matter of the suit and the parties thereto, whether correct or erroneous, cannot be called in question by the parties or privies in any collateral action or proceeding." Again, at pages 668-669, it is said: "It is a familiar principle that the judgment or decree of a court of general jurisdiction cannot be collaterally questioned, except for want of authority over the matter adjudicated upon. A lack of it, on the other hand, will lay the judgment open to successful impeachment if such fact is made to appear from the face of the record or by matters dehors where extraneous evidence is receivable for that purpose. It is this jurisdictional element that differentiates a void from a voidable judgment, the distinction between them being that when a court attempts to render the former a jurisdictional fact is absent without the existence of which the court is without authority to act at all. A judgment, in fact, rendered by a court whose want of jurisdiction is made to appear is no judgment at all and binds no one. It is the power and authority which lie behind the judgment and not the result reached that determines its validity; the true inquiry on collateral attack being, not whether jurisdiction has been regularly exercised but whether it has been obtained at all, or if duly conferred, whether it has been subsequently lost or exceeded. A wrong decision where jurisdiction exists is error for correction in a direct proceeding by appeal, writ of error, or otherwise."

The action of the quorum court in undertaking to appropriate funds as an expense account for Stubble-

field as ex-officio road commissioner was irregular and in part void. Section 2527 of Pope's Digest, after designating the procedure to be followed by the quorum court, says (subdivision six), "The court shall then proceed to the making of appropriations for the expenses of the county or districts for the *current* year." Section 30, Art. VII, of the Constitution, is: "The justices of the peace of each county shall sit with and assist the county judge in levying the county taxes, and in making appropriations for the expenses of the county in the manner to be prescribed by law." Section 2505, of Pope's Digest, prohibits the county court from making any contract unless a *previous* appropriation has been made therefor. It follows that the only valid appropriations made for the expense items were those of January 7, 1935, and January 4, 1937, for such current years.

While the appropriations for 1935 and 1937 were valid as such, allowances made in consequence of the appropriations are void for a different reason. Section 20, Art. 7, of the Constitution, provides that "No judge or justice shall preside in the trial of any cause in the event of which he may be interested." The county court, as county judge, being ex-officio road commissioner, was not competent to pass upon the road commissioner's expense accounts, involving an exercise of judicial discretion. The salary, having been fixed by law, is not affected by the constitutional provision.

We are also of the opinion that the cause should have been transferred to chancery. In *Grooms* v. *Bartlett,* 123 Ark. 255, 185 S. W. 282, an action was brought in the Conway circuit court by appellant as a taxpayer, who sought to compel the county clerk to account for excess fees. In that case it was said: "The officers of the county are trustees in the management and application of the funds of the county, and it is well settled that equity has jurisdiction to prevent the misapplication of trust property." It was then stated that taxpayers were proper parties to bring the action, adding: "It follows from the view we have expressed that the plaintiff has a right to maintain the present

action under the allegations of his complaint, but he should have brought his suit in the chancery court . . . The demurrer should not have been sustained and the complaint dismissed for the error of the complaint as to the kind of action, but the court should have treated the demurrer as a motion to transfer to equity and the action should have been transferred to the chancery court.''

The judgment of the circuit court is reversed, and the cause remanded with directions to grant appellants' motion to transfer to equity, where the proceedings will be had in a manner not inconsistent with this opinion.

Mr. Justice MEHAFFY dissents from that part of the opinion holding that the cause should be transferred to chancery.