Taylor *v.* J. A. Riggs Tractor Company.

4-5411                                                    122 S. W. 2d 608

Opinion delivered December 19, 1938.

*Dean, Moore & Brazil* and *Fred A. Donham,* for appellant.

*Barber & Henry, Williamson & Williamson* and *P. A. Lasley,* for appellee.

Griffin Smith, C. J.   This appeal presents questions requiring a construction of act 193, approved March 3, 1937.[1]

Appellee, for a consideration of $4,362.64, sold Perry county a tractor, payment to be made in equal quarterly installments of $545.33, beginning January 15, 1939. The last installment matures October 15, 1940.

---

[1] Act 193 is as follows: "An act to make it a misdemeanor for any county official in the state of Arkansas to violate the terms and

conditions set out in Amendment No. 10 to the Constitution of the state of Arkansas for 1874. Be it enacted by the General Assembly of the state of Arkansas: Sec. 1. Hereafter it shall be the express duty of each Prosecuting Attorney in each respective judicial district in this state to enforce, without requiring affidavits of information, the terms and conditions of Amendment No. 10 to the Constitution of 1874 wherein it is provided, among other things, that no County Judge, County Clerk or other county officer, shall sign or issue any scrip, warrant or make any allowance for any purpose whatsoever or authorize the issuance of any contract or warrant, scrip or other evidence of indebtedness in excess of the revenue received from all sources and, hereby, especially from the provisions of act 63 of 1931, being the County Turnback Funds, for any current fiscal year, provided the various county judges at their discretion are hereby authorized to set aside out of said Turnback Fund hereafter received not more than 50 per cent. of said fund for the purpose of constructing and maintaining county roads, and when so set aside by proper order of County Court the same shall be used for that purpose only, and provided further this act shall not prevent the carrying out of any pledge made by any county for the payment of bridge improvement district indebtedness, and provided further that this act shall not affect any agreement heretofore entered into for the payment of judgment or judgments heretofore entered against any county or counties of this state. Section 2. The General Assembly realizing the terms and conditions imposed upon county officials in this state by virtue of Amendment No. 10 does hereby make this express intent as the intention of this act; namely, that, henceforth, it shall be the duty of each Prosecuting Attorney in each judicial district in this state to adequately enforce the provisions of said Amendment No. 10 and that said Prosecuting Attorney shall be liable to impeachment of office if he or his office does not see to it that the provisions, terms, and conditions of Amendment No. 10 are adequately complied with; for the purpose it shall hereafter be necessary for each county official in this state to annually, during the last week of each year he is in office, supply the Prosecuting Attorney or his office in their office in their respective districts with a report showing funds received and funds paid out during each fiscal year. Section 3. All laws and parts laws in conflict herewith are hereby repealed and this act is hereby designated to be severable and should any part thereof be held invalid such holding shall not affect any other part thereof. Section 4. Although the people of this state adopted Amendment No. 10 to the Constitution of the state of Arkansas for 1874, and although its provisions are adequate if properly enforced, the same have not been enforced and has thereby brought about a condition of laxity on the part of our county officials relative to expending more funds than received during each fiscal year; therefore, an emergency is hereby declared to exist and this act shall be in full force and effect from and after its passage. Approved March 3, 1937.

The purchase is evidenced by an agreement of August 16, 1938, executed by the County Judge. At an adjourned term of County Court August 29, 1938, the contract was confirmed by an order which, if valid, would have the effect of a judgment.

Appellant Taylor, a citizen and taxpayer, intervened. He was granted an appeal to Circuit Court, where the cause was heard on stipulation,[2] without jury.

[2] Stipulation: (1) On or prior to August 29, 1938, the plaintiff delivered to the defendant one D-6 Caterpillar Tractor 72-inch gauge, serial No. 2 H 5382 W, fully equipped. Said tractor was accepted by said county. (2) The delivery and acceptance of said tractor was made pursuant to a contract of sale and purchase executed on behalf of said county on August 16, 1938, by Oscar Brazell, County Judge thereof, wherein the said county agreed to purchase of the said J. A. Riggs Tractor Company the tractor aforesaid, f. o. b., Little Rock, for the sum of $4,362.64. The purchase price for said machinery and equipment was to be paid by eight warrants of said county, each in the sum of $545.33, payable out of any money in the treasury of said county to the credit of the Highway Improvement Fund. (3) On August 29, 1938, the same being an adjourned day of the regular July, 1938, term of said court, the County Court of said county made and entered an order approving, ratifying and confirming said contract of purchase and sale, and upon the same day, after examining the duly verified and itemized claim of the said J. A. Riggs Tractor Company filed against said county for the purchase of said tractor, approved the same and ordered the County Clerk to issue and deliver the warrants in the amount and payable out of the funds as hereinbefore set out. Said warrants have been issued and delivered. (4) At the time of the purchase of said tractor said county was in need of machinery and equipment with which to maintain and construct county roads. That the equipment hereinabove described is suitable for said purposes, and was purchased at a price that was fair and reasonable. That is was to the best interest of said county to purchase the machinery and equipment aforesaid; that the county is now using the machinery and equipment and has been so doing since the date of its delivery, for the purpose of constructing and maintaining roads of said county, and that said tractor has been found to be satisfactory in all respects. (5) The Highway Improvement Fund hereinabove mentioned and out of which the warrants aforesaid are payable, consists exclusively of money received by Perry county from the state of Arkansas under act 11 of the Second Extraordinary Session of the Forty-ninth General Assembly, approved February 12, 1934, which designates said money in the state treasury as the "County Highway Fund," sometimes also referred to as the "County Turnback Fund." (6) The amount of money called for by either of

The Circuit Court properly held that Amendment No. 10 to the Constitution[3] does not prohibit counties from making contracts for expenditures in excess of revenues derived or anticipated from the so-called Turnback Fund.

In *Anderson* v. *American State Bank*, 178 Ark. 652, 11 S. W. 2d 444, we held that the Turnback was not a county fund, and was not controlled by Amendment No. 10. Other decisions have been consistent with the Anderson Case.[4]

The Circuit Court's second declaration of law was that act 193 did not prohibit Perry county from making contracts and incurring expenditures for the 1938 fiscal year in excess of amounts received during such period if payment is pledged from the Turnback.

the said contract of purchase, the allowance of the claim for the purchase price of said tractor, or the warrants issued thereon, all as aforesaid, when added to the aggregate of the contracts, allowances and warrants previously made and issued during the year 1938, payable also from the Highway Improvement Fund, exceeds the amount that will be received from the state of Arkansas by said county for credit to its Highway Improvement Fund during the fiscal year 1938.

[3] Pertinent parts of Amendment No. 10 are: "The fiscal affairs of counties . . . shall be conducted on a sound financial basis, and no county court or levying board or agent county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk, or other county officer, sign or issue any scrip, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year. . . . When the annual report of any . . . county in the state of Arkansas shows that scrip, warrants or other certificates of indebtedness had been issued in excess of the total revenue for that year, the officer or officers of the county . . . who authorized, signed or issued such scrip, warrants or other certificates of indebtedness shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined in any sum not less than five hundred dollars nor more than ten thousand dollars, and shall be removed from office."

[4] *Burke* v. *Gullege*, 184 Ark. 366, 42 S. W. 2d 397; *Stanfield* v. *Kincannon*, 185 Ark. 120, 46 S. W. 2d 22; *Ogden* v. *Pulaski County*, 186 Ark. 337, 53 S. W. 2d 593; *Independence County* v. *Independence County Bridge District No. 1*, 187 Ark. 140, 58 S. W. 2d 938; *Ladd* v. *Stubblefield*, 195 Ark. 261, 111 S. W. 2d 555.

In its third declaration the court held that if the act should be so construed as to prohibit counties from making contracts and incurring expenditures in excess of amounts actually received from the Turnback and other funds during a designated fiscal year, that part of the act would be void because the command can only be understood and the legislative intent ascertained by referring to Amendment No. 10, and § 23 of Art. 5 of the Constitution does not permit laws to be revived, amended, or the provisions thereof extended by reference.[5]

In conclusion, the court held that the contract to purchase, the order of the County Court approving the claim, and the eight warrants payable from the Turnback were in all respects valid.

Counsel for appellee insists it is not reasonably possible to spell out of the language of act 193 any limitations upon expenditures from the Turnback. In the first place, they say, title to the act is the Legislature's assurance that nothing is to be dealt with except Amendment No. 10.[1]

After stating the duties of Prosecuting Attorneys with respect to enforcement of the Amendment and mentioning by way of emphasis its purpose to prohibit issuance of warrants or the making of contracts in excess of revenues received from all sources, the act says: . . . "and, hereby, especially from the provisions of act 63 of 1931, being the County Turnback Fund, for any current fiscal year."

This provision is followed by a clause authorizing County Judges "to set aside out of said Turnback Fund heretofore received not more than 50 per cent. of said fund for the purpose of constructing and maintaining county roads." Other portions of the section relate to pre-existing indebtedness, which will be referred to in order.

Appellee contends that § 1 deals with but two matters: duty of Prosecuting Attorneys to enforce Amend-

[5] Article 5, § 23, of the Constitution: "No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."

388

ment No. 10, and the right, created in County Judges, to set aside fifty per cent. of the Turnback, and . . . "in accomplishing these objects the act certainly did not, by its language, place any limitation or inhibition on the expenditure of the Turnback. The only mention of the Turnback found in the act is that part of § 1 following the figures '1874' beginning with the words 'wherein it is provided' and ending with the words 'fiscal year.' The part of the section just referred to is certainly only descriptive. It merely, gratuitously and futilely, expresses the opinion of the Legislature as to what Amendment No. 10 provides. This language, being purely descriptive, has no legislative force or effect, and therefore of itself can place no limitation upon the expenditure of the Turnback."

We agree with appellee that the language employed cannot, "of itself," place a limitation upon expenditures from the Turnback. But the language is not intended to stand alone. Some meaning must be given to words used by the Legislature in its obvious endeavor to identify the Turnback. We must presume the lawmaking body was apprised of the interpretation given Amendment No. 10 by this court. There was knowledge that the Turnback had been classed as a state fund—a fund exempt from the provisions of the Amendment. With this information before it, the General Assembly undertook to compel enforcement of what it considered salutary provisions of Amendment No. 10—enforcement through express directions to Prosecuting Attorneys. But following the mandate so expressed, and following enumerated prohibitions of the Amendment which was designed to prevent any county officer from making expenditures and creating obligations in a manner counter to the Amendment's purpose, there was added the language in controversy, . . . "and, hereby, especially from the provisions of act 63 of 1931, being the County Turnback Fund, for any fiscal year." To give the quoted part of the section effect, the word "from" must be construed as meaning revenue arising from the Turnback.

In *White* v. *Loughborough*, 125 Ark. 57, 188 S. W. 10, in disposing of a case involving annexation of additional

territory to a pre-existing paving improvement district, Chief Justice McCulloch, speaking for the court, said: "It is an instance of the Legislature declaring a right and referring to other existing laws for the remedy, which method of legislation does not offend against that provision of the Constitution which declares that 'no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only.' "[6]

The instant statute is not one where a law was "revived, amended, or the provisions thereof extended or conferred by reference to the title only." Section 1 sets out, in explicit terms, the essential provisions of Amendment No. 10. There is no reference whatever to a title. But there is a declaration that the Turnback shall be controlled by the provisions of Amendment No. 10, and this may be done by the method adopted. Further evidence of the legislative intent to require counties to conduct their financial affairs with revenues received from *all* sources for a particular year is reflected by the emergency clause (§ 4 of act 193) where it is declared that failure of officials to enforce the Amendment has "brought about a condition of laxity . . . *relative to expending more funds than [are] received during each fiscal year . . .*" [Italics supplied].

[6] In *Scales* v. *State*, 47 Ark. 476, 1 S. W. 769, 158 Am. Rep. 768, Chief Justice Cockrill said: "It is well settled that § 23 of article 5 of the Constitution does not make it necessary, when a new statute is passed, that all prior laws modified, affected, or repealed by implication by it should be re-enacted."

In *Watkins* v. *Eureka Springs*, 49 Ark. 131, 4 S. W. 384, this court said: "We are not, however, prepared to assert that when a new right is conferred or cause of action given, the provision of the Constitution quoted requires the whole law governing the remedy to be re-enacted in order to enable the courts to effect its enforcement. . . . They (the makers of the Constitution) meant only to lay a restraint upon legislation where the bill was presented in such form that the legislator could not determine what its provisions were from an inspection of it. What is not within the mischief is not within the inhibition. Every intendment is to be indulged in favor of the prerogative of the legislative branch of the government. A doubt of its powers to legislate inures to its benefit. The language of the provision is so broad that a literal construction would hamper legislation almost to the extent of prohibiting it." See *Farris* v. *Wright* and cases cited in dissenting opinion by Mr. Justice Smith, 158 Ark. 519, 250 S. W. 889.

It must be conceded that the act is ineptly expressed; yet, if we are able, from the terms employed, to determine what the purpose of the Legislature was, and if the manner of enactment does not violate accepted constitutional construction, it is the duty of this court to give effect to the intent.

County Judges, "at their discretion," are authorized to "set aside out of said Turnback Fund heretofore received, not more than fifty per cent. of said fund for the purpose of constructing and maintaining county roads." A limitation on this right is that its exercise shall not impair pledges for payment of bridge improvement district indebtedness, nor shall the act affect "any agreements heretofore entered into for the payment of judgment or judgments entered against any county or counties of this state."

Prior to approval of act 193, it was lawful for County Judges to pledge expectant funds from the Turnback. Hence, if an apportionment of 50 per cent. or any other part of such Turnback, when set aside in a separate account for construction and maintenance of county highways, should result in impairment of contracts made before the act was approved, to such extent the statute would be void.[7]

We are of the opinion that the reference in § 1 of act 193 to "agreements heretofore entered into for the payment of judgment or judgments" contemplated valid contracts made by County Judges payable from the Turnback. Where purchase was so made, an implied agreement arose that such judge, when County Court convened and the claim was duly presented, would make an order of allowance. Such allowance would have the effect of a judgment. Under this construction no distinction is made between valid contracts, and agreements for judgments.

The judgment is reversed. The cause is remanded with directions to the Circuit Court to enter an order adjudging that payment of the warrants in question may be made from any presently available funds of the county.

[7] Article 2, § 17, of the state Constitution is: "No bill of attainder, *ex post facto* law, or law impairing the obligation of contracts shall ever be passed."

As to that part of the judgment directing payment from prospective Turnback funds—funds accruing to succeeding fiscal years—there is disregard of what we construe to have been the legislative intent, as expressed by act 193. Therefore, the agreement upon which the judgment was predicated is prohibited.