ARKANSAS STATE HIGHWAY COMMISSION *v.* PULASKI COUNTY.

4-7075                                           168 S. W. 2d 1098

Opinion delivered March 1, 1943.

396

*Neill Bohlinger,* for appellant.

*Sam Robinson* and *Murray O. Reed,* for appellee.

McHANEY, J. Appellee through its county judge brought this action against Earl Page, state treasurer, to enjoin him from withholding from the County Turnback Funds due to Pulaski county the sum of $5,649.21, which sum was one-half the cost to the state of procuring right-of-way for the relocation of state highway No. 65, in the construction of the Levy-Amboy Overpass State Job No. 6271. The complaint set out the resolution of the State Highway Commission, directing the state treasurer to withhold said sum and to transfer it to said department, in the following language: "Whereas, in the building of the Levy-Amboy Overpass, State Job No. 6271, this department petitioned the county court of Pulaski county, asking for right-of-way for said struc-

ture which is a part of the state highway system and right-of-way for relocation of state highway No. 65, and

"Whereas, the county court of Pulaski county failed to grant such a petition and make a court order procuring such right-of-way within 60 days after the presentation of said petition, and

"Whereas, it thereby became necessary for the State Highway Department to condemn the right-of-way needed for said structure, and the relocation of said state highway, and

"Whereas, the Highway Commission, in the acquisition of said right-of-way, expended the sum of $11,298.43, and

"Whereas, under Act 281 of the Acts of the General Assembly for the year 1941, Pulaski county became liable for one-half of said sum, which money due by said county shall be deducted from any appropriation due Pulaski county for gasoline or other turnback funds.

"Now, therefore, be it resolved, that the Treasurer of the State of Arkansas be, and he is hereby directed to withhold from any turnback funds due Pulaski county the sum of $5,649.21, and the same shall be transmitted to this department."

It was alleged the action of the commission was void, first, for the reason that Act 281 of 1941 was in conflict with § 28 of art. 7 of the constitution; and, second, that the act was not complied with in that no petition asking for said right-of-way was ever legally presented to the county court of Pulaski county. Appellant, by leave of court, intervened in the action as the real party in interest, and filed an answer denying the material allegations of the complaint and alleged the petition for right-of-way had been presented to the county court in the proper manner and that said court had refused said petition, and, by reason of said refusal, it had been compelled to prosecute its condemnation suit in the circuit court of said county to secure the necessary right-of-way for said road, and had been forced to expend the sum of $11,298.43 therefor. It prayed that the temporary injunction theretofore issued be dissolved and that the

funds impounded thereby be released to it. By way of amendment to the complaint appellee alleged that Act 205 of 1929, as amended by Act 281 of 1941, was void because in conflict with § 23 of Act 11 of the Special Session of 1934. Also that said § 23 of Act 11 of 1934, being in conflict with Act 205 of 1929, the latter was repealed by implication, and that 281 of 1941 was void in that it attempted to amend an act already repealed.

On the trial, it was stipulated that the Levy-North or Levy-Amboy Overpass, carried on the records of appellant as Job No. 6269 and 6271, had reference to the same road; that the county court of Pulaski county is legally in session each week day; that it is held by the county judge in his office in the courthouse; that the right-of-way involved was procured by appellant as alleged by it at the cost stated above.

The county judge testified that on January 2, 1941, Mr. Ford, representing appellant, Mr. Lewis of the Chamber of Commerce, and Mr. Pickens came to his office in the courthouse with an elaborate blueprint and a type-written petition, and that he agreed to take the matter under consideration. The papers (referring to the blue-print and the petition for the right-of-way here involved) remained in his office for weeks. He thought he finally filed them with the clerk, (but it was stipulated they were not so filed). His mental reaction was that the county had no interest in the road and that it would be unfair for him to proceed with the condemnation proceedings. He turned the project down, but no order was entered to that effect. Mr. Bogart, right-of-way engineer for appellant, testified that he had charge of presenting petitions to the county courts; that in October, 1940, he presented a petition for this right-of-way to the then judge of the county court who stated he had disposed of all county funds for such purposes and suggested that it be taken up with the incoming county judge; that early in January, 1941, he presented the same petition to the new county judge at his office, where it was refused, the judge stating that he would not sign court orders granting any right-of-way on the highway system, that he left a copy of the petition and court order with the judge;

that he had obtained other right-of-way orders from the same judge when he followed the same procedure, that is, the applications were made and orders granted without being first filed with the county clerk; and that this was the usual mode of presenting such petitions.

The court found that the resolution of the Highway Commission, copied above, was not properly made because not authorized by law, and that the funds involved should be remitted to the treasurer of Pulaski county. A decree to this effect was accordingly entered. This appeal followed.

Section 2 of Act 205 of 1929, as amended by Act 281 of 1941, p. 732, reads as follows: "Where the State Highway Commission petitions any county court asking for right-of-way for any state highway, and where the county court fails to grant such petition and make court order procuring such right-of-way within sixty days after such petition is presented, then the highway commission may take such steps as they deem expedient to acquire such right-of-way, either by purchase, exercise of their right of eminent domain, or otherwise; and in such event, one-half of the cost of acquiring such right-of-way shall be deducted from the next payment due any county by reason of an appropriation out of the State Highway Fund or State Revenue from gasoline (motor vehicle fuel) or auto license tax to the county or county highway fund of such county." The only change made by the amendatory Act of 1941 was to reduce the amount to be deducted from the turnback fund due to the county from three-fourths of the cost of acquiring such right-of-way to one-half the cost thereof.

Section 23 of Act 11 of the Special Session of 1934 provides that the net tax from motor vehicle fuel levied by said act shall be divided: 92.3 per cent. shall be deemed state highway revenue, and 7.7 per cent. shall be deemed county highway improvement revenue, and shall be credited to the "County Highway Fund." It is then provided: "Said County Highway Fund shall be segregated, set apart and placed in trust for the sole, separate and exclusive use of the several counties of this state to be apportioned under existing laws, and the state expressly

covenants that it will not permit the percentage herein allotted to the County Highway Fund to be reduced." Section 52 of said Act 11 of 1934, after repealing certain acts and parts of acts, provides: "All other acts or parts of acts inconsistent with the provisions of this statute to the extent of such inconsistency are likewise repealed."

Appellee seeks to sustain the decree of the trial court on four grounds: (1) that Act 205 of 1929 was repealed by Act 11 of 1934; (2) that said Act 205 of 1929 is unconstitutional in that it invades the jurisdiction of the county court as set out in § 28 of art. 7 of the constitution; (3) that Acts 205 of 1929 and 281 of 1941 are in violation of § 11 of art. 16 of the constitution; and (4) "that the resolution of the State Highway Commission is void because the purported petition involved in this case was not dated, not verified as required by law, and admittedly never filed with the county clerk of Pulaski county."

We cannot agree that Act 205 of 1929 was repealed by Act 11 of 1934, either expressly or impliedly. Although a number of acts and parts of acts were repealed by Act 11, Act 205 was not mentioned as one of them. If repealed, it must be by implication and such repeals are not favored. We see no inconsistency between them. Act 205 is entitled "An Act to Provide for Acquiring Right-of-Way for State Highways." It deals only with that subject whereas Act 11 does not in any manner attempt to cover that subject. It is the refunding act of 1934, commonly referred to as the Futrell Refunding Law. It deals generally with the refunding of highway, toll bridge and road improvement district obligations, and the payment or funding of certificates of indebtedness issued in aid of municipal improvement districts and claims against the Highway Commission. It levied a tax on motor vehicle fuel and in § 23 provided for a distribution of the tax as stated above. It is therein provided that the portion of the tax going to the counties was "to be apportioned under the existing laws." Act 205 of 1929 was an existing law and was not repealed.

It is said that Act 205 as amended deprives the county court of its exclusive original jurisdiction over

county taxes, roads, etc., given it by § 28, art. 7, of the constitution, but we cannot agree that this is true. No county taxes are here involved and no county road is involved. It is a state highway, and the jurisdiction of the court was attempted to be invoked by the presentation to it of the petition. It is said the Highway Commission is given the arbitrary power to condemn and take the lands and to "charge the county highway tax revenues with the costs" thereof. But the revenue here involved is not a "county highway tax" revenue. It is a fund arising from a state tax and not a county tax. We have many times so held. *Anderson* v. *American State Bank,* 178 Ark. 652, 11 S. W. 2d 444; *Stanfield* v. *Kincannon,* 185 Ark. 120, 46 S. W. 2d 22; *Ladd* v. *Stubblefield,* 195 Ark. 261, 111 S. W. 2d 555. In *Taylor* v. *J. A. Riggs Tractor Co.,* 197 Ark. 383, 122 S. W. 2d 608, we did not change the rule. There is here no invasion of the jurisdiction of the county court by said Act 205 as amended.

■ It is said Acts 205 and 281 are unconstitutional because in violation of § 11 of art. 16 of the constitution which provides that no moneys arising from a tax levied for one purpose shall be used for any other purpose. The contention is that the taxes collected under Act 11 of 1934 for the County Highway Fund would be used for state highways, which is a different purpose. Act 11 of 1934 does not provide how the County Highway Fund shall be expended by the counties with the exception provided in the last part of § 23, not applicable here. We see no diversion of a tax levied for one purpose to another purpose.

■ It is finally contended that the petition for the right-of-way order was never legally presented to the county court. Both Acts 205 and 281 require the Highway Commission to petition the "county court asking for right-of-way for any state highway." Of course if this were not done, then appellant has no right to withhold the fund here involved. But we think the undisputed proof shows that it did petition the county court for the right-of-way here involved on two separate occasions and that both were denied. One petition was presented to Judge Burlingame, before he went out of office,

and the other to Judge Newton, soon after he came into office, and both were sitting in open court at the time. It is true that the petition was not filed with the county clerk, and we think it would be putting form above substance to say, that because the petition was never actually delivered to the clerk's office and stamped filed by him, it was not in effect filed and presented to the court and by the court denied. It was left in the office of Judge Newton for many weeks, and we think it was filed to all intents and purposes. Proceedings before the county courts are more or less informal. Petitions and orders are frequently presented to the court, without first being filed, and when the order is obtained, both are filed with the clerk and the order entered of record. This was not a claim against the county and the petition did not ask the county to pay for the right-of-way. It prayed only for the order, which was done in the usual and customary way, according to the engineer in charge of procuring right-of-way for state highways. In *ex parte Morton,* 69 Ark. 48, 60 S. W. 307, where the court indorsed on the petition ''Ignored entirely'' and no order denying the petition was placed of record, it was held the indorsement on the petition amounted to a final order from which an appeal would lie, even though not entered of record in the clerk's office. We, therefore, hold that the petition was legally presented to the court and was denied, and that more than sixty days having elapsed, appellant had the right to acquire the right-of-way and to withhold one-half the cost from the turnback fund due the county.

The decree is reversed, and the cause remanded with directions to dissolve the injunction and to dismiss the complaint for want of equity.

McFADDIN, J., (dissenting). When the State Highway Commission undertakes to appropriate to its own use a portion of the county turnback fund of any county, then certainly the State Highway Commission should pursue the strict letter of the law and should show court action by documents and not by casual conversations.

The record here shows that no petition was ever filed by the State Highway Commission in the county

court of Pulaski county in accordance with either Act 205 of 1929 or Act 281 of 1941. All that occurred were two informal conversations. In October, 1940, when Judge Burlingame was the county judge of Pulaski county, a representative of the State Highway Department asked Judge Burlingame about the matter; and the judge stated that Pulaski county was without funds. This is certainly far from filing a petition and securing an order of denial thereon. Then in January, 1941, when Judge Newton was county judge, a representative of the highway department asked Judge Newton to make an order; and the judge replied that he wanted to look into the matter further. No petition was ever filed with the county court of Pulaski county. As was said by the United States Circuit Court of Appeals of the Second Circuit in the case of In re *Gubelman*, 10 F. 2d 926: "The word 'filed' has not been defined by Congress. It has, however, a well-defined meaning. It signifies the delivery into the actual custody of the proper officer, designated by the statute, and whose duty it is to keep the records of the court. It carries with it the idea of permanent preservation of the thing as a public record. A paper is not filed by presenting it to the judge. He has no office in which papers are filed and permanently preserved. A paper in a case is not filed until it is deposited with the clerk of the court, for the purpose of making it a part of the records of the case. See *United States* v. *Lombardo*, 241 U. S. 73, 36 S. Ct. 508, 60 L. Ed. 897; *Laser Grain Co.* v. *United States*, 250 F. 826, 163 C. C. A. 140; *Emmons* v. *Marbelite Plaster Co.*, (C. C.) 193 F. 181; In re *Von Borcke*, (D. C.) 94 F. 352."

If any taxpayer of Pulaski county had wanted to know what the court had done about highway condemnation, the taxpayer could never have ascertained the facts by looking at the docket of the county court, because the docket showed nothing filed and no order made or refused. The county court is a *court;* and matters before it and actions taken by it are not to be proved by casual conversations, but are to be proved as the solemn action of any other court is to be proved. If the highway commission of Arkansas had filed its papers

with the county court, like any other litigant was required to do, then the county court of Pulaski county could have legally granted or refused the requested order. Until that was done, the State Highway Commission had no right to appropriate funds of Pulaski county.

Furthermore, the whole procedure of taking this money away from Pulaski county appears to have been an afterthought and without any accounting for the amount taken. The State Highway Department waited until October 22, 1942, before passing a resolution attempting to take this money. Act No. 281 of 1941 says in part, (a) "And in such event, one-half of the cost of acquiring such right-of-way shall be deducted from the next payment due any county by reason of any appropriation out of the State Highway Fund. . . ."

There is nothing in the record in this case to show whether this deduction covered by the resolution of October 22, 1942, came out of "the next payment" after the acquiring of the right-of-way; and there is nothing in the record to show any sort of accounting by the State Highway Commission to Pulaski county as to what was the amount paid for right-of-way damages for any property taken or damaged.

Therefore, because of the irregularities of the highway department in its procedure in this case, this cause should be affirmed, and I, therefore, respectfully dissent from the holding of the majority; and I am authorized to state that Mr. Justice Robins joins me in this dissent.