WOOLLARD *v.* ARKANSAS STATE HIGHWAY COMMISSION.

4-9846                                    249 S. W. 2d 564

Opinion delivered June 9, 1952.

*Hale & Fogleman,* for appellant.

*Frierson, Walker & Snellgrove* and *Murray O. Reed,* for appellee.

GEORGE ROSE SMITH, J. This is a suit brought by twenty landowners and the Town of Turrell, to enjoin

the State Highway Commission from relocating a twelve-mile segment of U. S. Highway 61. At present this part of the highway extends northward from the City of Marion, passes through the unincorporated towns of Jericho and Clarkedale, and continues on to Turrell. The Commission has instituted condemnation proceedings to obtain a new right-of-way that will lie west of the existing highway and will by-pass Jericho, Clarkedale, and Turrell. The chancellor, after a hearing at which a number of witnesses testified, denied the temporary injunction sought by the plaintiffs. Three issues are presented by this appeal from the chancellor's order.

I. It is contended that the Highway Commission cannot in any circumstances so reroute the highway as to by-pass Jericho, Clarkedale, and Turrell, since these three communities were shown on the map that the legislature adopted as the basic state highway system. Ark. Stats. 1947, § 76-501. We disagree. This section of the statute authorizes the Commission "to make, from time to time, such necessary changes and additions to the roads designated as State Highways, as it may deem proper," with a proviso that the Commission "shall not have authority to eliminate any part of the Highway System." In construing a 1923 statute which was superseded by the present law, we held that the General Assembly had not prohibited changes in the system, however substantial, as long as a particular unit of the system was not eliminated as a whole. *Bonds* v. *Wilson,* 171 Ark. 328, 284 S. W. 24. In effect we said that a unit of the system consists of a fairly direct route that connects one terminus with another. Applying that reasoning to the case at bar, we are not willing to say that the section of U. S. Highway 61 now in question amounts to a unit in the system. One would hardly refer to Jericho and Clarkedale, two miles apart, as termini of a national highway that runs from New Orleans to the Canadian border. The Arkansas terminal points of this thoroughfare are its entrance into the State at the Tennessee border and its exit at the Missouri line as the road goes on its way to St. Louis. Under the ruling in the *Bonds* case the Commission's action in moving a twelve-mile

segment of the highway westward for about a mile does not have the effect of eliminating a unit in the highway system and is therefore permitted by the statute.

II. The second argument is that the condemnation is not for a public purpose, since the Commission seeks a right-of-way 250 feet in width and yet proposes to build in the immediate future a paved highway that will be only 24 feet wide. Most of the testimony heard by the chancellor was directed to this issue. For the landowners there was proof that even a four-lane highway may be built upon an easement not exceeding one hundred feet in breadth. But for the Commission there was convincing evidence that the course adopted will result both in public economy and in traffic safety.

The Commission's testimony pretty well proves that on this section of Highway 61 there is already a need for four lanes of travel. The proof indicates that a four-lane thoroughfare is desirable when traffic exceeds 4,000 vehicles a day, and at present more than 5,000 cars and trucks travel daily on that part of Highway 61 that the Commission seeks to relocate. Even though the Commission's existing commitment is to construct only a 24-foot two-lane highway, its plan for the future, when justified by available funds, is to build a second two-lane road, separated from the first by a parkway that will provide earth for the necessary fills and also promote the public safety by dividing the two arteries of traffic. By acquiring a sufficiently broad right-of-way in the first instance the Commission expects to avoid the expense that is incident to any attempt to enlarge a roadbed that has been hemmed in by the various commercial establishments that tend to spring up along the border of a public highway. It is evident that the present undertaking would not be necessary had the State taken a sufficiently wide easement when the road from Marion to Turrell was originally laid out. In these circumstances it is certainly permissible for the Commission to look ahead in its planning. ''In determining whether the taking of property is necessary for public use not only the present demands of the public, but those which may be fairly anticipated

in the future, may be considered." *Rindge Co.* v. *County of Los Angeles,* 262 U. S. 700, 67 L. Ed. 1186, 43 Sup. Ct. 689.

We need not detail the evidence that shows a 250-foot easement to be necessary, for the appellants shouldered a heavy burden of proof in attempting to persuade the courts to override the Commission's judgment. Although we have suggested that the legislative determination of the necessity for the taking is conclusive on the judiciary, *Sloan* v. *Lawrence County,* 134 Ark. 121, 203 S. W. 260, the view now prevailing makes the legislative judgment subject to review in cases of fraud, bad faith, or gross abuse of discretion. *State Highway Com'n* v. *Saline County,* 205 Ark. 860, 171 S. W. 2d 60. There being testimony by experienced engineers that a 250-foot right-of-way is needed in this instance, the chancellor was correct in holding that the Commission's decision was not arbitrary or capricious.

III. It is finally contended that the chancellor should have enjoined the Commission from proceeding further with an action it originally filed in the county court. The facts are that the Commission first petitioned the county court to provide a right-of-way, but that tribunal took no action on the petition within sixty days. Thereupon, as authorized by statute, the Commission filed condemnation proceedings in the circuit court. Ark. Stats., §§ 76-511 and 76-518; *Ark. State Highway Com'n* v. *Pulaski County,* 205 Ark. 395, 168 S. W. 2d 1098. We are not convinced that the continued pendency of the county court proceeding threatens in any way to visit a loss upon these appellants, but in any event the Commission's election to proceed by eminent domain in the circuit court amounted to an abandonment of its earlier petition. There was no need for the chancellor to exercise his injunctive power to achieve a result that had already been attained by operation of law.

Affirmed.

MINOR W. MILLWEE, Justice, dissenting in part. I agree with the conclusions reached by the majority on all points except the second where it is held that the Commis-

sion did not abuse its discretion in fixing the width of the right-of-way at 250 feet. While the Commission is vested with a broad discretion in such matters, this court is committed to the sound and well-recognized principle that no more property of private individuals can be condemned under the doctrine of eminent domain than is absolutely necessary for the public use. *Young* v. *Gurdon,* 169 Ark. 399, 275 S. W. 890; *Selle* v. *City of Fayetteville,* 207 Ark. 966, 184 S. W. 2d 58. An abuse of the power vested in the Commission by the taking of property from a citizen in excess of that reasonably required for the public improvement contemplated is a danger that must always be guarded against.

It is clear from the testimony that in the beginning the Commission felt that a 200-foot right-of-way was all that could reasonably be required. The principal reason for relocating the highway was the difference in costs of procuring a right-of-way over the present route of the road and that of the proposed route. In a determination of this differential all costs estimates were made on the basis of the 200-foot right-of-way. It is clear from the testimony of the planning engineer of the Highway Department that plans for a 250-foot right-of-way were finally submitted only because the American Association of Highway Officials recommended such width as being ''desirable' 'or ''preferable''. The witness admitted that the association allowed ''a leeway between 150 and the desirable width of 250'' and it is undisputed that federal road authorities would readily approve a 200-foot right-of-way.

The reason given for taking the extra 50 feet was that it would provide a more convenient source of material for making fills for the second section of a four-lane highway in the event that the State might at some time in the unpredictable future be in position to build such a road. The proposed route traverses valuable farm lands and the evidence discloses that the lands are fairly level and that very little fill would be required over most of the route. The planning engineer who made up the approved plans and is experienced in such matters emphatically

stated that, "talking personally", he preferred a design with a 200-foot right-of-way without the additional 50-foot width to obtain a more convenient source of material for fills. The majority mentioned the testimony on behalf of appellants to the effect that a 100-foot strip would be adequate for the proposed improvement. An engineer with wide experience in such matters testified that the extra 50 feet of right-of-way was not needed, that the Highway Department would not maintain it, but would allow it to grow up in weeds and not permit the landowners to cultivate it.

A careful reading of all the testimony convinces me that any taking in excess of 200 feet is grossly excessive and unnecessary for the improvement contemplated. The decree should be modified to this extent.